Hurley, J.
The plaintiff and the defendant Kenneth Trojano entered into an oral agreement to build a house on land owned by the defendants, sell it, and share the profit from the sale. The defendant, Kenneth Trojano agreed to provide the lot (owned by the defendant, Patricia Knapp) and additionally to provide $15,000.00 to be used to purchase construction materials. The plaintiff agreed to construct the house. The plaintiff commenced construction and stopped work when the construction was 80% to 90% complete due to a dispute between the parties concerning funding to complete the house. At the time the plaintiff left the job, he had furnished labor and materials in the sum of $13,200.00 and Trojano had provided $15,208.00 for materials and labor. Trojano spent $ 18,198.86 to finish construction of the house after the plaintiff left the job. The trial judge valued the lot at $11,500.00. The house was eventually sold for $85,000.00.
The plaintiff brought an action in the district court for breach of contract, quantum meruit, and his share of the profits from a joint venture. The defendants denied liability and counterclaimed for breach of contract and misrepresentation. The trial court found for the plaintiff against the defendant, Kenneth Trojano[2] in the sum of $22,440.00 with interest at a rate of 12% from the date the property was sold. The defendant, Kenneth Trojano, appealed.
The defendant claims the trial court erred in finding for the plaintiff on a joint venture theory, and in finding for the plaintiff where the plaintiff breached the contract by leaving the job. Additionally, the defendant claims the trial court erred in awarding interest at 12% pursuant to M.G.L., Chapter 231, Section 6C.
The defendant claims error, in part, because the plaintiffs complaint is based upon theories of breach of contract or quantum merit, not joint venture or accounting theories. Dist./Mun. Cts. R. Civ. P., Rule 15(b) permits the trial court to reach issues not raised by the pleadings if those issues are tried by express or implied consent of the parties. The trial judge, at the outset, informed the parties that the pleadings raised the issue of a joint venture, and that he would undertake an accounting if certain facts were presented at trial. *18 The defendant argues that he did not impliedly consent to a trial on the unpled theory of joint venture. He argues that he was prejudiced because he did not interpose a defense of “unclean hands”, which he would have done had he known equitable principles would be implicated. The defendant concedes, however, that “there are no factual issues remaining to be tried.”[3] We believe the record is clear that the trial judge informed the parties that joint venture principles were implicated and neither party objected. We determine that the defendant had a fair opportunity to defend, and that no additional evidence would be proffered if the case were to be refried. The trial judge did not abuse his discretion in trying the unpled issue. Harrington-McGill v. Old Mother Hubbard Dog Food, Inc., 22 Mass. App. Ct. 966 (1986); Ellis v. Arkansas Louisiana Gas Co., 609 F. 2d 436, 439 (10th Cir. 1979).
A party to a joint venture may seek to recover his share of the profits in a civil action on a contract theory. Berwin v. Cable, 313 Mass. 431 (1943). Such an action may be brought in the district court. Whitehead v. Krock Industries, Inc., 346 Mass. 767 (1963). Pursuant to G. L. c. 218, § 19, the District Court “shall have original jurisdiction concurrent with the Superior Court of all civil actions in which money damages are sought.” G. L. c. 214, § 3(5) provides that the Supreme Judicial and Superior Courts “shall have original and concurrent jurisdiction of actions of such a nature that they cannot be conveniently and properly adjusted and settled in an action in the District Court.” We believe that this course does not present facts requiring trial in the Superior Court. The trial court found that the parties had agreed to associate for a joint profit in the construction of a single family house. This agreement contemplated the contribution by each of money, land, labor and materials limited to a single undertaking. They agreed that each would be reimbursed for their expenses and divided the profits equally. There is nothing in the court’s findings to suggest other than that both shared aright to participate in the management of the object of the. venture. All these facts warrant the conclusion by the trial court that the parties’ agreement amounted to a joint venture. Shain Investment Co., Inc. v. Cohen, 15 Mass. App. Ct. 4 (1982).
The purpose of this venture was completed by the actions of the defendant after the plaintiff left the job site after a dispute about future financing. All that was left to be done after the sale of the house was a final settlement between the plaintiff and the defendant. The computation of damages in this case is not so complicated by untried facts that it cannot be taken in this action.
The defendant contends that the plaintiff breached the contract by leaving the project, and thus may not participate in any profit realized upon the sale. The trial court found that at the time the plaintiff left the project the house was 80% to 90% complete. The trial court awarded the plaintiff one-half of the profit, plus the $13,288.00 he had contributed to the project. The trial court did not find that the plaintiff had breached the agreement, but rather that the defendant continued the project, using the contribution of the plaintiff. Because the plaintiff left the project he does not necessarily lose his original investment, nor a share in the enterprise proportionate to his contribution. Turtur v. Isserman, 2 N.J. Misc. 1084 (1924). A joint venture has been likened to a partnership. Doiron v. Castonguay, 401 Mass. 705, 707 n.2 (1988). Whether a joint venturer in a case such as this should be denied credit for his contribution rests ultimately in the discretion of the trial judge. Shulkin v. *19 Shulkin, 301 Mass. 184 (1938).
Following these principles, we determine that the trial judge correctly awarded the plaintiff his investment of $13,288.00, but incorrectly awarded one-half of the total profit to the plaintiff. While the defendant advanced sums to complete the project, he has not shown damages caused by the plaintiff leaving the project when he did. The plaintiff contributed 23% of the total costs of the house. The profit from the sale of the house amounted to $18,305.14. The trial judge’s award of one-half of the profit to the plaintiff is in accord with the finding of a joint venture to split evenly the profit derived from the project. However, implicit in the agreement that the profit from the sale would be divided equally is an obligation that both parties would complete the project. We therefore determine that the judge erred in awarding the plaintiff one-half of the profit. He should not have awarded a sum which exceeded the proportion which the plaintiffs contribution bore to the total cost of the house.
Judgment entered on November 30,1987. On December 9,1987, the defendant filed a motion to amend findings and judgment. On January 5, 1988, an amended judgment was entered. On January 11,1988, the plaintiff moved to amend the findings and amend the amended judgment. This motion was denied on January26,1988. Draft reports were filed on February3,1988. The report was allowed on March 4,1988. The case was entered in the Appellate Division on March 28, 1988. On June 28, 1988, sua sponte, the trial court amended the amended judgment by changing the interest rate from 6% to 12%. On July 22,1988, a Supplemental Draft Report was allowed. It was filed in the Appellate Division on August 18,1988.
At oral argument, counsel pressed no procedural irregularity. While there is no provision in Dist./Mun. Cts. R. Civ. P. Rule 64 for supplemental draft reports, there is authorityfor a justice to amend his report [Rule 64 (c) (4) ]. The issue of the applicable interest rate on the judgment is before the Appellate Division without the supplemental report'There is no claim of prejudice and we treat this supplemental draft report as not too repugnant to the procedural scheme of Rule 64 as to require dismissal. Cape Cod Bank & Trust v. Letendre, 384 Mass. 481 (1981).
The trial judge was without authority to aménd the judgment on June 28, 1988. A mistake in selecting the appropriate interest rate to apply to a judgment is not a clerical error that can be corrected pursuant to Dist./Mun. Cts. R. Civ. P., Rule 60. Frank D. Wayne Associates v. Lussier, 394 Mass. 619 (1985). A judge does have authority to amend his findings on his own initiative not later than 10 days after the entry of judgment. Dist./Mun. Cts. R. Civ. P., Rule 52. Rule 52 did not permit the interest ráte amendment in this case since it occurred well after the 10 day limit had expired. Since the amendment to 12% was a nullity, the 6% interést rate is properly before the Appellate Division.
Interest on this judgment runs at the rate of 12%from the date of the sale of the house. The defendant breached his obligation to the plaintiff when he failed to pay over to the plaintiff his share of the profit from the sale of the house. General Laws, Chapter 231, Section 6C, sets the rate of interest applicable to this contract action. Perkins School For The Blind v. Rate Setting Commission, 383 Mass. 825, 835-836 (1981).
Judgment shall enter for the plaintiff in the sum of $17,498.00 together with costs and interest at the rate of 12% from May 3,1985.

 The trial court found for th.e defendant, Patricia Knapp. This finding is not before this court on appeal.

 Defendant's biief at page 6 (.emphasis added)